(No. 76460.—

*In re* FRANCIS M. DISCIPIO, Attorney, Respondent.

*Opinion filed December 1, 1994.—Rehearing denied January 30, 1995.*

BILANDIC, C.J., and FREEMAN, J., took no part.

Deborah M. Kennedy, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Ralph W. Miller, Jr., of Oak Brook, for respondent.

JUSTICE McMORROW delivered the opinion of the court:

In this attorney discipline case, respondent, Francis M. Discipio, concedes that he violated the Code of Professional Responsibility (the Code) when he improperly divided his legal fees with Jerome Ruther, a disbarred attorney. However, respondent disputes whether he aided Ruther in the unauthorized practice

of law when he permitted Ruther to gather preliminary factual information from workers' compensation clients and obtain the clients' signatures to pertinent documents. We conclude that respondent's actions aided Ruther in the unauthorized practice of law. For respondent's violations of the Code, we suspend respondent's license to practice law for a period of two years.

I

Respondent, Francis Discipio, has been licensed to practice law in this State since 1948. Most of his practice has been devoted to representing clients in workers' compensation claims. From 1957 to 1973, respondent had a working arrangement with Jerome Ruther, also then a licensed Illinois attorney, whereby Ruther referred workers' compensation clients to respondent. In exchange for these referrals, respondent divided his legal fees with Ruther. Approximately 50% to 60% of the fee was retained by respondent, and the remainder was paid to Ruther. In addition to the referral, Ruther provided respondent with facts and information relating to the case. When a case was filed with the Industrial Commission, both respondent and Ruther were specified as attorneys of record for the claimant.

In October 1971, Ruther was indicted in the United States District Court for the Northern District of Illinois. (United States v. Ruther (N.D. Ill. 1981), 71—CR—992.) He was charged with having filed fictitious and fraudulent claims against an insurance company. Ruther pled guilty to one count of mail fraud, and in April 1972, he was sentenced to six months and one day in Federal prison. He served approximately two months of the sentence and was paroled for the remainder of his term. In January 1973, Ruther was disbarred by order of this court, on his motion that his name be stricken from the roll of attorneys.

Respondent learned of Ruther's disbarment shortly

after its announcement in 1973. Respondent was also aware that the Federal conviction was the basis for Ruther's disbarment. Respondent never made inquiries of Ruther about his Federal conviction or his disbarment.

The arrangement between Ruther and respondent to refer workers' compensation claims in exchange for a portion of the fee continued notwithstanding Ruther's disbarment. Ruther continued to gather preliminary information from the client and forward this information to respondent. Ruther also had the client sign various documents which were sent to respondent. Respondent would then meet with and consult the client, complete the necessary forms and documents, and pursue the matter to completion. After Ruther's disbarment, respondent was specified as the only attorney of record for the claimant in suits filed before the Industrial Commission. When clients indicated that they believed Ruther was an attorney, respondent advised that he was not an attorney. Respondent also advised the clients not to pay Ruther because respondent would pay Ruther for his services. However, respondent did not inform the clients how much he would pay Ruther.

Ruther continued to refer clients to respondent until 1986. From 1973 to 1986, respondent's firm received approximately 200 referrals from Ruther, and paid Ruther approximately $170,000 in fees. Respondent always submitted 1099 tax forms to the Internal Revenue Service to report the monies he had paid to Ruther. Although respondent knew that Ruther had tried but failed to gain reinstatement to the practice of law on three occasions between 1976 and 1986, respondent did not ask Ruther why the efforts had been unsuccessful.

The Administrator of the Attorney Registration and Disciplinary Commission filed a complaint against respondent alleging that his arrangement with Ruther amounted to: (1) conduct prejudicial to the administra-

tion of justice in violation of Rule 1—102(a)(5) of the Code (107 Ill. 2d R. 1—102(a)(5)); (2) aiding the unauthorized practice of law in violation of Rule 3—101(a) of the Code (107 Ill. 2d R. 3—101(a)); (3) sharing legal fees with a nonlawyer in violation of Rule 3—102(a) of the Code (107 Ill. 2d R. 3—102(a)); and (4) conduct which tends to defeat the administration of justice and brings the courts or legal profession into disrepute in violation of Supreme Court Rule 771 (107 Ill. 2d R. 771).

In his own defense, respondent testified that he served in the Air Corps from 1942 to 1945. He graduated from DePaul Law School and received his law license in 1948. After several years' employment with Travelers Insurance Company, respondent started his own practice, concentrating on workers' compensation claims. In his years of practice, respondent has been active in several bar associations. He has made numerous contributions over the years to several charitable organizations and has raised a family. Respondent testified that he had a previously untarnished and unblemished legal career. He cooperated fully with the Administrator's investigation of this case.

Respondent also offered the stipulated testimony of August M. Mangoni, a licensed attorney professionally and personally acquainted with respondent. Mangoni stated that respondent has a reputation as a competent, ethical and conscientious attorney and that he has an excellent reputation for honesty, trustworthiness and integrity in the legal community in which he practices. Mangoni's opinion of respondent was in no way diminished by his knowledge of the contents of the Administrator's complaint against the respondent. The same representations were made in the stipulated testimony of Ralph W. Miller, Jr., who has held numerous legal positions, including that of Commissioner of the Illinois Industrial Commission from 1981 to 1986. Miller stated

that respondent "demonstrate[d] only the highest standards of ethical advocacy and professional behavior." To the same effect was the stipulated testimony of Richard H. Williams, a licensed attorney of long-standing professional acquaintance with the respondent.

Following an evidentiary hearing on the Administrator's charges against the respondent, the Hearing Board determined that the Administrator had proven that respondent's working arrangement with Ruther amounted to improper fee splitting with a nonlawyer in violation of Rule 3—102(a) of the Code, and also determined that respondent's conduct brought the legal profession into disrepute in violation of Rule 771. The Hearing Board concluded that the Administrator had failed to prove by clear and convincing evidence that respondent had aided Ruther in the unauthorized practice of law. The Board did not make a finding with respect to whether respondent's actions violated Rule 1—102(a)(5) regarding conduct that tends to defeat the administration of justice. Considering the evidence in mitigation, the Hearing Board recommended that respondent be censured. The Review Board sustained the findings of the Hearing Board and also recommended the disciplinary sanction of censure.

The Administrator takes exception to two aspects of the recommendations of the Hearing and Review Boards. First the Administrator argues that the evidence demonstrated that the respondent aided Ruther in the unauthorized practice of law. Second, the Administrator contends that the respondent should receive a three-month suspension rather than censure.

## II

We consider first whether respondent aided Ruther in the unauthorized practice of law. According to evidence presented to the Hearing Board, after Ruther was disbarred, Ruther interviewed workers' compensation

clients in order to obtain basic information called for in a standard workers' compensation form entitled "Application for Adjustment of Claim." A representative copy of a blank application is attached to this opinion as an appendix. Information called for on the application pertained, generally, to the client's background and employment history, a description of the accident or illness, and the type of injuries or damages the client had sustained. The application also asked questions such as the following:

"Is Petitioner currently receiving Temporary Total Disability Benefits in the proper amount?"

"Is Petition for Immediate Hearing attached?"

"How did Employer get Notice of Accident?"

"Was Employee given Industrial Commission Information Handbook?"

The application carried a cautionary instruction to the claimant that read: "This is a legal document. Be sure all the above blanks are filled in correctly and that you have read and understood the statements below before you sign." At the bottom of the application, there appears a statement that "Disclosure of this information to the Industrial Commission is done voluntarily under Il. Rev. Stat. ch. 48.138.6." Ruther would fill in the information called for on a copy of the application and have the client sign several blank applications for adjustment of claims.

Ruther also had the clients execute medical authorization forms and an attorney representation agreement. The purpose of the attorney representation agreement was to formalize the understanding that the attorney specified in the agreement would represent the client in his or her workers' compensation claim. In the event that the client recovered workers' compensation benefits, the agreement specified the amount of fees to which the attorney would be entitled. The agreement further stated, "It is *** agreed that this agreement is subject

to and governed by the Illinois Workers' Compensation Act, Section 16a, including in particular the limitation of attorneys' fees in death cases, total permanent disability cases and partial disability cases." In addition, the agreement recited that the client "has read and understood this Attorney Representation Agreement." Representative blank copies of the medical authorization form and attorney representation agreement are also attached as an appendix to this opinion.

Once Ruther had obtained sufficient information from the client and the forms had been signed, Ruther delivered the documents to respondent. Respondent then consulted with the client and asked the client if he or she wanted respondent to act as counsel in the workers' compensation claim. Respondent emphasized to the client that he would be the sole attorney acting in the client's behalf. If the client indicated that he or she wanted to retain respondent as counsel in the workers' compensation claim, respondent obtained the necessary information from the client, verified the information provided by Ruther and obtained additional facts not disclosed on the preliminary documents Ruther had provided. Respondent then completed an application for adjustment of claim and completed the attorney representation agreement. Respondent never asked the client what advice or information he or she had received from Ruther. Respondent also did not ask Ruther how he had learned of the client's claims.

Respondent never permitted Ruther to use the firm's stationery or the firm's office space. Once clients were referred to respondent, they were told not to contact Ruther any further in the handling of their claims. Ruther was allowed follow-up contact with a client only when the client could not be located by respondent. If a client told respondent that he or she thought Ruther was an attorney, respondent answered that Ruther was not a lawyer.

At issue is whether Ruther's completion of the pertinent forms and his gathering of the information necessary to those forms amounted to the practice of law. Definition of the term " 'practice of law' " defies mechanistic formulation. (*People ex rel. Chicago Bar Association v. Barasch* (1950), 406 Ill. 253, 256, quoting *People ex rel. Illinois State Bar Association v. Schafer* (1949), 404 Ill. 45, 50.) As this court has noted, "it is the character of the acts themselves that determines the issue" (*Chicago Bar Association v. Quinlan & Tyson, Inc.* (1966), 34 Ill. 2d 116, 120). The focus of the inquiry must be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent. See *In re Yamaguchi* (1987), 118 Ill. 2d 417, 426-27; *People ex rel. Chicago Bar Association v. Goodman* (1937), 366 Ill. 346, 351.

On the present record, we conclude that respondent's arrangement with Ruther aided Ruther in the unauthorized practice of law. Respondent argues that the evidence failed to show that Ruther did, in fact, provide services to clients that amounted to the practice of law. Respondent argues that the services provided by Ruther were comparable to those performed by a law clerk or paralegal. On this basis, respondent contends that he did not aid Ruther in the unauthorized practice of law. We disagree. As this court stated in *In re Krasner* (1965), 32 Ill. 2d 121, regarding a charge that an attorney allowed others to solicit legal business in his behalf:

> "Anchoring his argument to the frequently expressed principle that charges in a disciplinary proceeding must be sustained by clear and convincing proof [citation] respondent contends there is no proof that Vogele, Skidmore or any other person actually solicited any cases, or that respondent had any knowledge they were doing so, and as a consequence no evidence that business was ever solicited by respondent or by others in his behalf. His theory seems to be that without direct testimonial evidence

of solicitation \*\*\*, the proof against him is neither clear nor convincing. We do not agree. *Circumstantial evidence is legal evidence and neither the commissioners nor this court are required to be naive or impractical in appraising an attorney's conduct. In this particular case, we need not remain blind or insensitive to the reasonable and clear cut intendments arising from respondent's own admissions and business records.*" (Emphasis added.) (*Krasner*, 32 Ill. 2d at 127.)

Similarly, in the present cause, the reasonable inferences that can be drawn from the nature of Ruther's activities with the clients demonstrate that respondent's arrangement with Ruther permitted Ruther to engage in the unauthorized practice of law. Although a law clerk or paralegal may possess the skills necessary to aid a client in filling out the workers' compensation forms at issue in the present cause, the circumstances surrounding respondent's working arrangement with Ruther were vastly different from the typical lawyer-paralegal or lawyer-law clerk relationship.

It is particularly significant that the working arrangement between respondent and Ruther began and continued for several years while Ruther was still licensed to practice law in this State. Once Ruther was disbarred, the arrangement continued unabated with only a minimal adjustment to reflect the fact that Ruther could no longer explicitly claim to be a licensed attorney in this jurisdiction. Consequently, the formal appearance of their working arrangement was modified so that Ruther was never referred to as an attorney in any documents filed with the Industrial Commission, and clients were advised, when they inquired, that Ruther was not a lawyer. However, the substance of Ruther's activities for respondent did not change after Ruther was disbarred. Ruther continued to locate the clients; Ruther continued to perform the initial interview of the clients; Ruther continued to gather pertinent information from the clients; Ruther continued to

ensure that the clients signed and executed the appropriate documents. And, when there was a recovery in the client's case, Ruther continued to receive approximately half of the fees paid over to the respondent. We note that law clerks or paralegals are not traditionally paid half of the fee recovered by an attorney who formally represents a client.

The documents that Ruther submitted to the workers' compensation clients required a degree of legal skill and knowledge for their comprehension and completion. For example, the application for adjustment of claim specifically stated that it was a "legal document" and called for information regarding legal rights such as temporary total disability and petitions for immediate hearing. The attorney representation agreement was intended to create a binding attorney-client relationship and was without question a document of significant legal import. Both the application for adjustment of claim and the attorney representation agreement contained express references to provisions of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). It is not unreasonable to infer that Ruther was called upon to explain to clients the significance of these statutory references. Such explanation required legal expertise in order to ensure that clients understood the statutory and legal principles referenced in the documents. In our view, the forms at issue here were more complicated than an agreement with respect to earnest money used to purchase a home, a type of form in the real estate industry which this court found acceptable for brokerage completion in *Quinlan & Tyson*, 34 Ill. 2d 116.

We also note that some of Ruther's clients actually thought and believed that Ruther was a licensed attorney, and told respondent of their perceptions. This court has previously cautioned members of the bar not

to employ disbarred or suspended attorneys. (See *In re Schelly* (1983), 94 Ill. 2d 234; *In re Kuta* (1981), 86 Ill. 2d 154.) In fact, our Rule 764(b) specifically requires a disciplined attorney to "cause the removal of any indicia of the disciplined attorney as lawyer, counsellor at law, legal assistant, legal clerk, or similar title." (134 Ill. 2d R. 764(b); see also *In re Parker* (1992), 149 Ill. 2d 222, 237.) The reasons for this rule are substantial and bear repeating here:

> "Without a doubt, a disbarred or suspended attorney should not serve as a law clerk or a paralegal during his disbarment or suspension. The line of demarcation between the work that a paralegal or a law clerk may do and those functions that can only be performed by an attorney is not always clear and distinct. The opportunity for a disbarred or suspended attorney who is serving as a paralegal or a law clerk to violate that line of demarcation is too great and too inviting. Also, the public is not aware of the differences between the work of a paralegal and that of an attorney. For a disbarred attorney to be seen performing what the public may perceive as legal functions can only lessen the public's regard for the effectiveness of our attempt to discipline errant attorneys, and would foment the belief that the public was not being protected from unethical attorneys." *Kuta*, 86 Ill. 2d at 161-62.

The *Kuta* case serves as a strong warning to attorneys in this State to be especially circumspect about entering into a business or professional arrangement with a lawyer whose license has been suspended or revoked by this court. The spirit of Rule 764(b) is to discourage arrangements that allow a disciplined attorney to engage in the unauthorized practice of law. (*Kuta*, 86 Ill. 2d at 161-62.) The instant cause does not fall precisely within the ambit of Rule 764, since Ruther did not perform his workers' compensation services in respondent's law office. However, we do not believe the objective of the rule can be avoided by the mere

expediency of having the suspended or disbarred attorney provide legal services from a location other than the law offices of an attorney who is still licensed to practice law in this State. In the present case, the use of respondent's office or stationery was not necessary in order to facilitate Ruther's unauthorized practice of law.

Our conclusion is not altered by the circumstance that respondent independently consulted with all of the clients and completed a final copy of the application for adjustment of claim and the attorney-client agreement. We also are not persuaded by respondent's argument that he did not depend upon Ruther for any legal advice or skill in his handling of the matter on behalf of the clients, or that Ruther had no further contact with the clients. As we noted previously, the arrangement between respondent and Ruther allowed Ruther to continue to provide the same services that he performed before he was disbarred, in exchange for a portion of the fee paid to respondent from the client's eventual recovery. The fact that Ruther did not appear before any tribunal on behalf of the workers' compensation clients does not diminish the fact that he engaged in the unauthorized practice of law in his consultations with clients referred to respondent.

The Hearing Board determined that the Administrator's evidence failed to prove that respondent aided Ruther in the unauthorized practice of law. Although the factual findings of the Board are generally entitled to deference, it is this court's duty to determine whether the respondent's actions amounted to a violation of the Code. (*In re Owens* (1991), 144 Ill. 2d 372, 377; *In re Chatz* (1989), 131 Ill. 2d 499, 505.) Based upon the extent, nature, and duration of the services provided by Ruther; the fact that there was no cognizable difference in the working arrangement between Ruther and respondent before and after Ruther's disbarment (other than the

fact that, once Ruther was disbarred, he was no longer shown as an attorney of record in claims filed before the Industrial Commission); the substantial fees that were generated by Ruther's arrangement with respondent and the fact that Ruther received approximately half of any fees paid to the respondent; and the fact that legal documents with legal significance were being completed and executed by Ruther with respondent's acquiescence, we are persuaded to conclude that respondent aided Ruther in the unauthorized practice of law, in violation of Rule 3—101(a) of the Code (107 Ill. 2d R. 3—101(a)).

This analysis brings us, then, to a determination of the appropriate sanction for respondent's misconduct. As noted, the Hearing and Review Boards found that respondent's actions constituted improper fee splitting and amounted to conduct that brought the legal profession into disrepute (107 Ill. 2d Rules 3—102(a), 771). Respondent does not challenge these findings.

Principles that guide our decision are well established. The purpose of attorney discipline is not to punish the respondent but to protect the public, maintain the integrity of the bar, and safeguard the administration of justice. (*In re Timpone* (1993), 157 Ill. 2d 178, 197.) It is vital that this court preserve public confidence in the integrity of the legal profession. Also, although a degree of uniformity and consistency has been acknowledged as appropriate, each case must be considered on its individual facts and merits. (*In re Joyce* (1989), 133 Ill. 2d 16, 31.) Our selection of a sanction may appropriately consider the deterrent value of attorney discipline and the need to impress upon others the significant repercussions of errors such as those committed by respondent in the present cause. *In re Imming* (1989), 131 Ill. 2d 239, 261.

This court has previously imposed suspension as an appropriate sanction for an attorney's division of his fees with a nonlawyer (see, *e.g.*, *In re Cetwinski* (1991),

143 Ill. 2d 396; *Krasner*, 32 Ill. 2d 121) and for aiding the unauthorized practice of law (*Yamaguchi*, 118 Ill. 2d 417; *Schelly*, 94 Ill. 2d 234). We have determined that the respondent aided Ruther in the unauthorized practice of law, and have noted the dangers of allowing a disciplined attorney to engage in law-related activities that amount to unauthorized legal practice.

In addition, the respondent's arrangement with Ruther was unquestionably an unethical sharing of legal fees with a nonattorney, in violation of the Code (107 Ill. 2d R. 3—102(a)). Improper fee splitting is a serious transgression that harms both the public and the legal profession. This court observed in *O'Hara v. Ahlgren, Blumenfeld & Kempster* (1989), 127 Ill. 2d 333, that fee sharing between attorneys and nonlawyers can readily lead to a variety of harms:

> "[It] provides an incentive for a layperson to recommend the services of an attorney with whom he or she will share the fees. Because the nonattorney assumes no responsibility for the case, the referral will more likely be based on the layperson's desire to share a fee than on the layperson's concern for the legal welfare of the client. [Citations.] The public is best served, however, by recommendations uninfluenced by financial considerations. [Citation.] ***
>
> Second, [a] fee-sharing agreement *** creates the possibility that the clients' rights may be adversely affected. Because the attorneys must share a portion of the fees received from certain clients, but not others, they may be tempted to devote less time and attention to the cases of the clients whose fees they must share. Any reduction in the quality of legal services rendered by an attorney to a client creates a risk that the rights of the client may not be fully protected and results in prejudice to the client." *O'Hara*, 127 Ill. 2d at 342-43.

The record does not reveal that respondent's legal representation of the workers' compensation clients was adversely affected or inhibited by respondent's division of his fees with Ruther. However, in view of the serious

potential for harm that arises from fee-splitting arrangements such as that proven in the instant cause, and in light of our conclusion that respondent aided Ruther in the unauthorized practice of law, we conclude that respondent's law license should be suspended for a period of two years. We believe that this sanction will ensure public trust and confidence in the legal profession and will maintain the integrity of the bar. We also find this sanction necessary in order to emphasize to respondent and other attorneys in this State that it is folly to accept referrals from a disciplined attorney under an arrangement similar to that agreed to by respondent and Ruther, and to divide a portion of one's legal fee with a disciplined attorney, especially where, as here, the attorney was disbarred and was repeatedly refused reinstatement to legal practice.

Respondent fully and candidly admits that he knew it was wrong to continue his association with Ruther once Ruther was disbarred. Respondent also admits that he knew it was wrong to share a portion of his fees with Ruther. Nevertheless respondent failed to end the arrangement after Ruther's law license was revoked. In addition, respondent failed to terminate the professional association even though he was aware that Ruther had repeatedly attempted, unsuccessfully, to gain reinstatement to the practice of law. Ruther's failure to gain reinstatement should have placed respondent on notice of the precarious nature of his continued association with Ruther.

We also find it significant that respondent's firm garnered considerable fees over the years because of respondent's association with Ruther. We discern no valid reason or explanation for the immense lapse of sound judgment that occurred in this case. Respondent is hereby suspended from the practice of law for a period of two years.

*Respondent suspended.*

CHIEF JUSTICE BILANDIC and JUSTICE FREE-
MAN took no part in the consideration or decision of
this case.

**APPENDIX**

**AUTHORIZATION FOR MEDICAL RECORDS AND REPORTS**

Date_____19___

To_____
    (Doctor or Hospital)

You, and any person associated with you, are hereby authorized to give to_____

_____or any representative thereof any and
all information which may be requested regarding my physical condition and treatment rendered by
you therefor, and if necessary to allow them, or any physician appointed by them, to examine any
x-ray pictures taken of me, or records which you may have regarding my condition or treatment.

Witness_____   (Signed)_____

WERNER PRINTING · 630-1960  FORM 65

# APPENDIX

ILLINOIS INDUSTRIAL COMMISSION
100 W. Randolph St., Suite 8-200
Chicago, Illinois 60601

NO. _____

DATE: _____

### ATTORNEY REPRESENTATION AGREEMENT
### WORKERS' COMPENSATION/OCCUPATIONAL DISEASE

The Undersigned _____ "client," retains
_____ "attorney," to prosecute and/or settle all disputed claims for benefits under the
Illinois Workers' Compensation Act or Occupational Disease Act against _____
"employer" on account of injuries arising out of and in the course of employment of _____
_____ on _____, 19 _____.

Client has given attorney a written offer, if any, from the employer or his agent to pay client a specific amount of compensation for permanent disability caused by the above injuries. Client and attorney each have a copy of that written agreement, if any, and each copy is signed by both client and attorney as of this date. Client agrees to pay attorney for representation before the Illinois Industrial Commission:

(A.) A sum of money equal to.

1. _____ % of any amount received in excess of the written offer, if any, or _____ % (not to exceed 20%) of the total amount received for compensation for permanent disability caused by the accident, whichever compensation sum of money is less; provided, however, if the amount received for compensation for permanent disability does not exceed the written offer, if any, attorneys shall receive no fee for compensation for permanent disability; or

2. $ _____ (not to exceed $100) if the Respondent and its agent does not dispute its liability, the proper amount of compensation is timely paid, the client does not receive an amount above that specified by law and the accident resulted in: death of the employee, amputation of one or more of a finger, toe or member; removal of a testicle; enucleation of or 100% loss of vision of an eye; fracture of one or more vertebra; fracture of a skull; fracture of one of more spinous or transverse process; fracture of one or more facial bone; removal of a kidney, spleen or lung;

(B.) and a sum of money equal to _____ % (not to exceed 20%) of any payments for compensation for temporary total disability which the employer or his agent refused to pay in a timely manner or in the proper amount;

(C.) and a sum of money equal to _____ % (not to exceed 20%) of all disputed medical bills;

(D.) and in addition to the above, all costs and expenses of prosecuting or settling the above claims.

It is agreed that no settlement shall be made without the consent of the client.

It is further agreed that there will be no charge for services of any kind unless a recovery is made.

It is further agreed that if client terminates this agreement prior to a recovery, client will pay attorneys from any subsequent recovery a reasonable fee as determined by the Industrial Commission (not to exceed the amounts set forth in (A) through (C) above) plus any unpaid costs and expenses related to prosecuting or settling the claim up to the date of termination of this agreement.

It is further agreed that this agreement is subject to and governed by the Illinois Workers' Compensation Act, Section 16a, including in particular the limitation of attorneys' fees in death cases, total permanent disability cases and partial disability cases.

Client states that this claim has not been solicited by the attorney or his agent.

Attorney states that he has reviewed each provision of this agreement with client.

Client states that he has read and understood this Attorney Representation Agreement.

Client acknowledges that on this date attorney furnished to client and client has received a copy of this Attorney Representation Agreement.

Client: _____

Client's Address _____

Client _____

Client's Address _____

Attorney _____

Firm Name _____

Firm's Address _____

Telephone No. _____

I.C. A-15 (1/91)
IL 565-6017

# APPENDIX

STATE OF ILLINOIS
INDUSTRIAL COMMISSION
100 WEST RANDOLPH STREET
SUITE 8-200
CHICAGO, ILLINOIS 60601

**APPLICATION FOR ADJUSTMENT OF CLAIM**
(File three copies of this form)

1. Workers' Compensation ☐    2. OR   3. Occupational Disease ☐    4. Non-Final ☐   OR   5. Final ☐

6.

EMPLOYEE - PETITIONER (1AA)

7. Case Number   (OFFICE USE ONLY)

8.

EMPLOYER - RESPONDENT (3AA)

9. (OFFICE USE ONLY)

The Petitioner alleges the following particulars relative to this Application under the provisions of the Workers' Compensation or Occupational Disease Act:

| 10. EMPLOYER'S NAME (3AA) | 11. ADDRESS | 12. CITY | 13. ZIP CODE |
| --- | --- | --- | --- |
| 14. INJURED EMPLOYEE'S NAME (1AA/5AA) | 15. ADDRESS | 16. CITY | 17. ZIP CODE |

**DEPENDENTS**

| NAME | AGE | RELATIONSHIP |
| --- | --- | --- |
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |

(Attach separate sheet for more than four)

Is Petitioner currently receiving Temporary Total Disability Benefits in the proper amount?

☐ Yes ☐ No .................... if no,

Has Petitioner Returned to Work?

☐ Yes ☐ No ........ ...............

How did Accident or Illness occur (Type)? _____ 29.

Part of Body Affected? _____ 30.

Nature of the Injury? _____ 31.

Has a prior Application been filed with the Industrial Commission by Petitioner or on Petitioner's behalf?

☐ Yes ☐ No

If yes, give number and disposition, if any* _____

Location of Accident or Last Exposure 18. City _____ State

Phone Number 19. _____

Social Security # 20. _____ - _____ - _____

Sex 21. _____

Marital Status 22. _____

Total # Dependents 23. _____

Birthdate 24. _____ Month / Day / Year

Gross Weekly Wage (Exclude Overtime) 25. $ _____

Date of Accident, Last Exposure, Disability or Death 26. _____ Month / Day / Year

Is Petition for Immediate Hearing Attached? 27. ☐ Yes ☐ No

Actual or Anticipated Return to Work Date 28. _____ Month / Day / Year   Commission Use Only

How did Employer get Notice of Accident? 32. ☐ Orally ☐ Written

Was Employee given Industrial Commission Information Handbook? 33. ☐ Yes ☐ No

**NOTE TO THE PETITIONER.** THIS IS A LEGAL DOCUMENT. BE SURE ALL THE ABOVE BLANKS ARE FILLED IN CORRECTLY AND THAT YOU HAVE READ AND UNDERSTOOD THE STATEMENTS BELOW BEFORE YOU SIGN.

DATE: 34. _____ Month / Day / Year   Petitioner's Signature

I hereby enter my appearance as attorney for Petitioner and certify that I have not directly or indirectly solicited employment by the Petitioner, and know of no solicitation of said Petitioner by any person that has resulted in the employment of myself or any member of my firm. A copy of Attorney Representation Agreement is filed with the Application for Adjustment of Claim.

35. _____ ATTORNEY (2AA)

36. _____ FIRM NAME

37. _____ ADDRESS

38. _____ CITY / STATE / ZIP CODE

39. _____ SIGNATURE

40. _____ TELEPHONE NO.

IC-1 (9-81)
IL 683-0603

DISCLOSURE OF THIS INFORMATION TO THE INDUSTRIAL COMMISSION IS DONE VOLUNTARILY UNDER IL. REV STAT. CH. 48 136.6 APPROVED BY FORMS MANAGEMENT.