# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2776

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

GARY E. PEEL,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:06-cr-30049-WDS-1—**William D. Stiehl**, *Judge*.

SUBMITTED JANUARY 10, 2012—DECIDED FEBRUARY 6, 2012

Before POSNER, MANION, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. A jury convicted the defendant of bankruptcy fraud, obstruction of justice, and possession of child pornography, and the judge sentenced him to a total of 144 months in prison (60 months for bankruptcy fraud, 144 months for obstruction of justice, and 120 months for possession of child pornography, with all the sentences to run concurrently). He appealed, challenging both the conviction and the sentence. In

our opinion deciding that appeal, 595 F.3d 763 (7th Cir. 2010), we affirmed in part and reversed in part, and remanded the case with directions that the district judge vacate either the bankruptcy fraud conviction or the obstruction of justice conviction, recalculate the intended loss, redetermine the guidelines sentencing range, and resentence the defendant in accordance with 18 U.S.C. § 3553(a). On remand the district judge followed our directions and imposed the same total prison sentence but reduced the special assessment by $100. The defendant again appeals.

The defendant's briefs either reargue issues decided in the first appeal or present arguments that could have been but were not made in that appeal. The new appeal is thus an untimely petition to rehear our previous decision (as well as a successive petition to rehear—he had filed a timely petition to rehear that had been denied). When a case is remanded, an appeal taken from the judgment entered on remand is limited to issues that could not have been raised in the prior appeal. A defendant "cannot use the accident of a remand to raise in a second appeal an issue that he could just as well have raised in the first appeal." *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996). The defendant's counsel offers no excuse for filing such an improper appeal, and indeed seems oblivious to its impropriety.

Vacating the defendant's conviction for obstructing justice (which we ordered for double jeopardy reasons) did not provide a compelling reason for a shorter sentence; the defendant did obstruct justice, and that was

a proper consideration in sentencing him. Nor does the defendant argue otherwise.

We instructed the district judge to knock $611,000 off his estimate of the intended loss from the bankruptcy fraud. He did so, and as a result reduced that sentence from 60 to 24 months. The new sentence was actually below the guidelines range for that count (51 to 63 months, although the statutory maximum was 60 months), and even though it was made consecutive to the child pornography sentence, the defendant's overall sentence was within the adjusted combined guidelines range (135 to 168 months) for when there are multiple counts of conviction. U.S.S.G. §§ 3D1.4, 5G1.2(d) and Application Note 1. The defendant does not challenge the new sentence for bankruptcy fraud.

The judge vacated the sentence for obstruction of justice (to which of course the defendant does not object), and reimposed the 10-year sentence for the child pornography counts (there were two, one for images placed in his ex-wife's mailbox and one for images found in his office garbage can), the maximum sentence for the offense. See 18 U.S.C. §§ 2252A(a)(5), (b)(2). Wanting to give the defendant the same total prison time as previously, this time the judge, as we have noted, made the sentence for bankruptcy fraud run consecutively to the sentence for child pornography, so that the total prison sentence was again 144 months. The appeal does not challenge the judge's action in making the new, lower sentence for bankruptcy fraud consecutive.

The defendant's briefs ignore the actual grounds for the remand and the adjustments the judge made in

resentencing the defendant (vacating the conviction and therefore the sentence for obstructing justice, reducing the sentence for bankruptcy fraud, and making the new sentence run consecutively to rather than concurrently with the reimposed sentence for possession of child pornography). The appeal challenges only the conviction and sentence on the child pornography counts.

We upheld both that conviction and the identical sentence in the first round. Nothing has happened to justify revisiting either ruling. The only challenge the defendant made in his first appeal to the sentence as distinct from the conviction was to an enhancement for "distribution [of child pornography] for pecuniary gain," U.S.S.G. § 2G2.2(b)(3)(A), and we rejected the challenge. All that has changed since is the statement that the defendant made before being sentenced (his "allocution," as it is called); it was less remorseful on the second round than on the first, and that is putting it mildly—the second statement was bumptious, defiant, and devoid of acknowledgment of wrongdoing. It would have justified a longer sentence on the child-pornography counts had that been possible. (It was not, because, as we said, he received the maximum sentence.) And the judge could easily have given him a longer total sentence by giving him a longer consecutive sentence for bankruptcy fraud; he gave him 24 months on remand—the statutory maximum is 60. The only changed circumstance—the defiant allocution—undermines rather than supports the defendant's challenge to the sentence reimposed on remand.

We could stop here, but will address the defendant's remaining arguments regarding the child pornography counts briefly.

In 1974 the defendant began having sex with his 16-year-old sister-in-law. In the course of the affair, which lasted several months, he took nude photographs of her that the jury in the present case (he had not been prosecuted earlier with respect to the sex or the photographs) found were sexually explicit within the meaning of the child pornography statute.

Many years after the affair he and his wife divorced, and made a marital settlement over which they later quarreled. In the course of negotiations to resolve their differences the defendant tried to blackmail her with the nude photographs of her sister, many of which he had retained. He hoped by doing so to induce her to agree to a modification of the marital agreement that would have reduced his long-term obligations to her by some three-quarters of a million dollars. Instead of knuckling under to his demands she complained to the police, and an investigation ensued that led to his prosecution and conviction.

As we explained in our first opinion, at the time the defendant took the photographs the federal statute under which he now stands convicted had not been enacted. When it was enacted, in 1978, it defined "child" as a minor under the age of 16, and the sister-in-law was 16 when she was photographed. But the defendant was convicted of possessing child pornography during 2005 and 2006, and the statute had been amended in

1984 to raise the cut-off age to 18. In the first round we rejected his argument (made for the first time in that appeal rather than at his trial, see 595 F.3d at 770, and therefore forfeited) that the statute grandfathers the possession of pornography that was legal when it was created. If accepted the argument would have the ridiculous consequence of allowing a person who happened to possess pornographic photographs of 16- and 17-year-olds taken before 1984 to market them, giving him a market that being shielded from new competition would offer substantial profit opportunities because after 1984 there could be no further legal production or possession of such pornography. He would enjoy the same kind of quasi-monopoly as someone who possesses paintings by a successful artist when the artist dies prematurely, which by freezing his output pushes up the price. Or as someone who possesses "pre-ban" elephant ivory (meaning ivory acquired before the Convention on International Trade in Endangered Species barred the importing and exporting of ivory). It's no longer legal to sell ivory domestically unless it was imported before the ban—and there's no such "unless" exception in the child-pornography statute.

The defendant argues that to use the money he hoped to save by blackmailing his ex-wife as a measure of "pecuniary gain" from the photos was improper because that money was not a measure of their "retail value," which is how the guidelines tell the sentencing judge to calculate pecuniary gain. U.S.S.G. § 2G2.2(b)(3)(A). That is another argument that we rejected in the first

appeal, noting that the defendant had been offering to sell the pornographic photographs to his ex-wife in exchange for forgiveness of part of his debt to her under their marital settlement agreement, and that while the primary aim of the enhancement for pecuniary gain is to discourage trafficking in pornography, which increases the incentive to create pornography and thus the amount of child pornography and the number of abused children (the "models" for the photographs), the use of pornography for blackmail was not obviously less evil than its sale in the open market, or indeed materially different from such a sale. It is hard to see why selling one pornographic photo to each of (say) five people deserves a heavier punishment than selling five photos to one person, especially given the underlying concern with the harm to the minor depicted in the photographs.

Anyway, all that "retail value" means is price obtained from a sale to the ultimate purchaser, as distinct from a sale made higher in the chain of distribution, as by a wholesaler to a retailer (necessarily at a lower price than the retailer will resell the product for, to cover his cost). The defendant's ex-wife would have been the ultimate purchaser of the photos had she submitted to his attempt at blackmail. She would have been their retail purchaser for a price of some $750,000 in forgone future income under the marital settlement. That she would have destroyed the photos does not mean she hadn't bought them; she had acquired them for money. A publisher of a book found to contain plagiarized material might decide as a public relations gesture to

buy back copies from the persons who had bought them, and having done so destroy the copies; still the publisher would have bought them at retail.

The current appeal, besides repeating arguments made in the previous one, argues that to punish the defendant for the illegal possession of child pornography legal when he created it violates both the free-speech clause of the First Amendment and the ex post facto clause of Article I. Those are frivolous arguments, as well as arguments that he forfeited by failing to raise them in the first appeal.

His final argument, and the one he presses with the greatest vehemence, though it was also forfeited by not having been raised in the previous appeal, is that this is so atypical a child pornography case that the sentence is unreasonably severe. For all he had done, he argues, was to have sex with an "adult," take some risqué pictures, and retain them. He had never distributed them, even after his blackmail attempt failed.

A 16-year-old is not an adult; and in the first appeal the defendant rightly did not argue that because the photos of his sister-in-law were not criminal when he took them they could not constitute sexual abuse of a minor. In fact under Illinois law in 1976 the sister-in-law was a child and in having sex with her the defendant was guilty of contributing to the sexual delinquency of a minor, Ill. Rev. Stat. 1967, ch. 38, ¶ 11-5; *People v. Keegan*, 286 N.E.2d 345, 346 (Ill. 1971), a misdemeanor form of statutory rape. The law has since been amended to make the kind of conduct in which he

engaged a felony. See 720 ILCS 5/11-1.60(d), (g). When one considers the ugliness of the defendant's criminal affair with his 16-year-old sister-in-law, the gross impropriety of his making and retaining (for decades) nude photographs of her, his use of those photographs to blackmail the girl's sister (his ex-wife), the very large financial gain that he anticipated from the blackmail, the fact that he is a lawyer, the effrontery of his allocution, and the fact that we had already upheld his 10-year sentence for possession and distribution of child pornography, we can find no basis for criticizing the sentence that the judge reimposed, let alone for vacating it.

AFFIRMED.