In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-1547

IN RE GARY E. PEEL,

*Debtor-Appellant.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:12-cv-00573-GPM — **G. Patrick Murphy**, *Judge.*

SUBMITTED JUNE 26, 2013 — DECIDED AUGUST 2, 2013

Before POSNER, FLAUM, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* The appellant, Gary Peel, is serving
a prison sentence for bankruptcy fraud and possession of
child pornography. 18 U.S.C. §§ 152(6), 2252A(a)(5)(B). See
*United States v. Peel*, 668 F.3d 506 (7th Cir. 2012); *United States
v. Peel*, 595 F.3d 763 (7th Cir. 2010). He is also in bankruptcy
court. His appeal challenges two rulings in his bankruptcy
proceeding: the striking of his filings and permitting the
trustee in bankruptcy to transfer an annuity owned by Peel
to his ex-wife Deborah.

Gary and Deborah had divorced in 2003 and agreed to a
marital settlement. Regarding an annuity that Gary had

bought that was to pay him $200 per month till his death, they agreed that the marital settlement required him to pay her "$200 per month…in lieu of her interest in [the annuity]." The effect was to award the entire annuity income to Deborah, while the annuity itself remained Gary's property.

Two years after the marital settlement Gary filed for bankruptcy under Chapter 7 of the Bankruptcy Code (liquidation) and asked the bankruptcy court to discharge the financial obligations to his ex-wife that the settlement had imposed. She opposed the discharge and filed a claim for the money that he owed her under the settlement. He responded by blackmailing her with nude photos of her sister as a child in an effort to convince her to drop the claim. His criminal convictions arise from the blackmail attempt, which failed.

Deborah and the bankruptcy trustee agreed that her claim against the debtor's estate in bankruptcy was an unsecured claim for $158,455.63. The bankruptcy judge approved the agreement. Included in the claim was $12,400 representing 62 $200 monthly payments that the trustee had received from the insurance company that had issued the annuity. Since Gary owned the annuity, these payments became part of the estate in bankruptcy. Their inclusion in her claim of the $12,400 was therefore a mistake. A claim in bankruptcy is a creditor's "right to payment" from the debtor, 11 U.S.C. § 101(5)(A); the annuity payments received by the trustee were assets of the estate in bankruptcy, not debts, because they were the debtor's property.

Even if the trustee was meaning to refer not to the $12,400 in annuity payments received by Gary's estate but to the "in lieu of" payments that Gary was obligated by the marital settlement to make to Deborah, their inclusion in her

claim still was improper. The Bankruptcy Code limits a claim against an ex-spouse's estate in bankruptcy for unpaid domestic support (alimony, child support, or any other maintenance obligation) to support that was due the ex-spouse no later than when the bankruptcy petition was filed. 11 U.S.C. § 502(b)(5); 4 *Collier on Bankruptcy* ¶ 502.03[6][a], pp. 502-41 to 502-42 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012). All the monthly payments that made up the $12,400 had become payable after Gary filed for bankruptcy, and so Deborah could collect those debts only from Gary personally. 11 U.S.C. § 502(b)(5). (There is no suggestion that the debts could be administrative expenses of the bankruptcy.) But Gary's appeal does not challenge the inclusion of the $12,400 in Deborah's claim in bankruptcy, so we shall not order it excluded.

Later the trustee moved the bankruptcy judge to permit him to transfer to Deborah $1000 in annuity payments that he had collected since settling her bankruptcy claim, and to direct the insurance company to make the future payments of $200 a month to her directly. The trustee reasoned that all the annuity payments were Deborah's property rather than property of the estate in bankruptcy. That was a mistake. The marital settlement had not transferred the annuity to Deborah. Gary had promised to pay her $200 a month "in lieu of" any interest she might have in the annuity—in other words, she had surrendered any such interest in exchange for his promise.

Yet the bankruptcy judge agreed with the trustee and so ordered the transfer to Deborah of both the $1000 in annuity payments that the trustee had received from the insurance company since determining Deborah's claim to annuity

payments, and the right to all future $200-a-month payments. This was a final order, appealable to the district court under 28 U.S.C. § 158(a)(1) within the loose meaning assigned to "finality" in bankruptcy, because the order determined whether certain assets were assets of the estate. See *In re Kids Creek Partners*, 200 F.3d 1070, 1074–75 (7th Cir. 2000). "[A] conclusive disposition of claims to assets would be a final decision in a stand-alone suit; therefore it is an appealable order." *In re Xonics, Inc.*, 813 F.2d 127, 130 (7th Cir. 1987); see also 16 Charles A. Wright et al., *Federal Practice and Procedure* § 3926.2, pp. 352, 358 (3d ed. 2012); cf. *In re Cash Currency Exchange, Inc.*, 762 F.2d 542, 545–46 (7th Cir. 1985); *In re Professional Insurance Management*, 285 F.3d 268, 281–82 (3d Cir. 2000); *In re Simpson*, 36 F.3d 450, 452 (5th Cir. 1994) (per curiam).

The Collier treatise helpfully designates these nonfinal orders as orders disposing of "discrete" (separate) claims, in the sense of claims distinct from other claims in the bankruptcy proceeding and therefore readily imaginable as claims the resolution of which would be deemed final, and therefore appealable, outside of bankruptcy. 1 *Collier on Bankruptcy*, *supra*, ¶¶ 5.08[1][b], [2], pp. 5-40 to 5-45. Separate is the word for Deborah's claim to the annuity, which can easily be envisaged as the sole claim in a lawsuit unrelated to bankruptcy.

The district judge affirmed the bankruptcy judge's order, and Peel, proceeding pro se, has appealed to us. 28 U.S.C. § 158(d)(1).

Peel had objected to the trustee's action initially in a filing signed by his second wife (from whom he is now also divorced), who is not a lawyer. The bankruptcy judge struck

that objection on the ground that only a licensed lawyer is permitted to file motions and objections to motions in a legal proceeding. See *In re Thomas*, 962 N.E.2d 454, 468 (Ill. 2012); *Downtown Disposal Services, Inc. v. City of Chicago*, 943 N.E.2d 185, 193 (Ill. App. 2011). But the judge allowed Peel, as a pro se, to argue orally against the trustee's motion, and he did.

Probably the judge erred in striking the wife's filing, though we won't have to decide that. The rules governing proceedings in the bankruptcy courts permit a debtor (as well as any other party to the proceeding) to "perform any act [in a bankruptcy proceeding] not constituting the practice of law, by an authorized agent, attorney in fact, or proxy." Fed. R. Bankr. Proc. 9010(a). That is why "the challenged activities of CBS [Creditors Bankruptcy Service, which is not a law firm but performs services such as filing claims in bankruptcy court on behalf of creditors and communicating with the debtor's counsel] have long been recognized by the bankruptcy courts as administrative functions that can be performed by authorized nonlawyer agents without offending rule 9010(a)'s prohibition against the unauthorized practice of law. We agree with the district court that Texas unauthorized practice of law standards do not apply to rule 9010(a)'s authorization for administrative practice in the bankruptcy courts." *State Unauthorized Practice of Law Committee v. Paul Mason & Associates, Inc.*, 46 F.3d 469, 472 (5th Cir. 1995).

A bankruptcy court looks to the law of the state in which the court is located to determine what constitutes the unauthorized practice of law. E.g. 2 *Collier on Bankruptcy*, *supra*, ¶110.12, p. 110-28. Illinois considers any action requiring "legal knowledge and skill" to be the practice of law. *In re*

*Discipio*, 645 N.E.2d 906, 910 (Ill. 1994); *People ex rel. Courtney v. Association of Real Estate Taxpayers*, 187 N.E. 823, 826 (Ill. 1933), quoting *People ex rel. Illinois State Bar Ass'n v. People's Stock Yards State Bank*, 176 N.E. 901, 907 (Ill. 1931). The bankruptcy judge seems to have thought that signing and filing documents are the unauthorized practice of law, for he didn't try to determine whether the wife had done anything more than file and sign. But merely signing and filing do not require legal knowledge or skill. The judge said "you may have a power of attorney but you're not a lawyer and you're not authorized to file pleadings on his behalf." But having a power of attorney (for example to enable one to make decisions for a disabled spouse) is no more practicing law than signing and filing are. If Peel's wife researched or drafted any part of his objection, the judge was correct to strike the motions. But there's been no determination of that; there is no evidence of it; and it's much more likely that Peel—a former lawyer (see *Peel v. Attorney Registration & Disciplinary Commission*, 496 U.S. 91 (1990)) whose pro se brief in this court is entirely competent—drafted the motions and she simply signed his name on them and filed them (since he was in prison in Kentucky). No matter; Peel's oral objection in the hearing before the bankruptcy judge sufficed to preserve the objection.

Peel's objection to the removal of the annuity from the estate—we come finally to the merits of the appeal—is well taken. The key is that the payments required by the marital settlement were to be in lieu of Deborah's interest in the annuity; the annuity itself belonged to Peel alone. The monthly payments that she has received pursuant to the marital settlement, the additional payments that Peel owes her, and the future monthly payments to which she is also entitled—all

of these were contractual rights that she'd obtained in the settlement in exchange for her surrendering all rights that she might have had to the annuity itself. The deal created a debt of her ex-husband to her; under Illinois law divorcing couples can create a debtor-creditor relationship in a divorce settlement. See *In re Marriage of Adamson & Cosner*, 721 N.E.2d 166, 176–77 (Ill. App. 1999); *In re Marriage of Rowden*, 516 N.E.2d 1041, 1043–44 (Ill. App. 1987).

It seems that Peel's only other creditor is the Internal Revenue Service and that both creditors will be paid in full, leaving something over for Peel, who as the debtor in bankruptcy is entitled to any assets remaining in the estate in bankruptcy after all creditors have been paid in full. 11 U.S.C. § 726(a)(6). But how much is that? The trustee, seconded by the bankruptcy judge, failed to reduce Deborah's claim of $158,455.63 by the $1,000 that he paid her from the assets of the estate in bankruptcy. The trustee mistakenly believed that the $1,000, along with any future monthly payments, are her assets. They're not. They're assets of the estate. She's just a creditor, and all she has coming to her in the bankruptcy proceeding is $158,455.63. Rather than being part of her claim, the $1000 was an additional payment to her by the trustee premised on his mistaken belief that she owns the annuity, and therefore the $1000 because it was a payment under the annuity by the insurance company that had issued it. Either she has to return the $1000 or (the simpler cure of the trustee's mistake) it has to be credited against the estate's $158,455.63 debt to her.

Once she receives the money to which she is entitled and the IRS receives the full amount due it, what's left in the estate goes back to Gary. But Deborah still has a contractual

claim to $200 a month, created by the marital settlement as interpreted by the parties. So after her bankruptcy claim is paid in full, if Gary stops paying her the $200 a month that he owes her she can sue him. But that would be a suit outside of bankruptcy rather than an adversary claim within it; the bankruptcy proceeding will be closed after all claims are paid and the remaining assets returned to Gary.

So we reverse the decision of the bankruptcy court. We direct the court either to order Deborah to return the $1000 to the trustee or order the trustee to deduct it from her claim, and we also direct the court to instruct the insurance company to resume making the annuity payments to the trustee until the assets in the estate in bankruptcy that remain after the creditors' claims are paid in full are returned to Peel and the bankruptcy is closed. After that the annuity payments will again be Peel's property, though his "in lieu" obligation to Deborah will continue until the obligation expires or is modified (we understand that Peel is seeking modification in a separate litigation).

REVERSED AND REMANDED.