OPINION OF THE COURT
Acting Chief Judge Simons.
 Respondent, an attorney licensed to practice law in this State since 1956, has been found guilty of eight charges of misconduct and disbarred. He raises two issues meriting discussion on this appeal. First, he claims that he cannot be found unfit to practice law because of acts committed while he was mentally ill and, second, he contends that the Court cannot discipline him for publishing a law-related article during his suspension from practice. We conclude that the Court properly considered respondent’s conduct while he was ill when determining fitness but that its imposition of discipline for publication of the article interfered with respondent’s constitutional right to free speech.
I
In 1978, respondent killed his wife and three children and was charged with four counts of second degree murder. A court found him not guilty by reason of mental disease or defect and ordered him placed in a psychiatric hospital. In 1980, respondent was discharged from the Creedmoor Psychiatric Center, and in 1988, he was discharged from mandated out-patient psychiatric care.
*340 Following his acquittal respondent was suspended from the practice of law because of his mental disability. His subsequent applications for reinstatement were unsuccessful but in 1989, we reversed an Appellate Division order denying reinstatement and remitted the matter for a hearing to determine whether respondent’s disability had been removed and whether, based on the record, he was fit to practice law (Matter of Rowe, 73 NY2d 336).
On remittal, petitioner Grievance Committee for the Second and Eleventh Judicial Districts filed eight charges of misconduct against respondent and a Special Referee, appointed by the Appellate Division, found respondent guilty of all charges after a hearing. The Court confirmed the Referee’s report, rejected respondent’s application for reinstatement and disbarred him. This appeal followed.
II
The first four charges of misconduct relate to the four killings and allege respondent violated Code of Professional Responsibility DR 1-102 (A) (6) (now DR 1-102 [A] [7] [22 NYCRR 1200.3 (a) (7)]), which prohibits a lawyer from engaging in “conduct that adversely reflects on [the lawyer’s] fitness to practice law.” Respondent contends that he should not be disciplined for violating this rule because his conduct was not criminally culpable.
The Code of Professional Responsibility, promulgated by the American and New York State Bar Associations and implemented by the rules of the Appellate Divisions, counsels that the continued existence of a free and democratic society depends on a concept of justice based upon the rule of law. Lawyers play a critical role in sustaining the rule of law and thus it is necessary that the legal profession maintain its unique ability to do so by earning the respect and confidence of society (Code of Professional Responsibility, Preamble and Preliminary Statement, Judiciary Law, Appendix). To this end, the courts are charged with the responsibility of insisting that lawyers exercise the highest standards of ethical conduct and insuring that only those fit to practice law are admitted to the Bar. Conduct that tends to reflect adversely on the legal profession as a whole and to undermine public confidence in it warrants disciplinary action (see, Matter of Holtzman, 78 NY2d 184, 191, cert denied — US —, 112 S Ct 648; Matter of Nixon, 53 AD2d 178, 181-182; cf., Matter of Mitchell, 40 NY2d 153,156).
*341 Respondent contends that though he has committed four homicides he was not mentally responsible for his acts and therefore those acts should not be considered in judging his fitness to be reinstated to the Bar. His argument fails to recognize the distinction between conduct that is criminal and conduct that disqualifies an attorney from entitlement to practice law. A disciplinary proceeding is concerned with fitness to practice law, not punishment. Criminal culpability is not, therefore, controlling (see, Matter of Samuels, 22 AD2d 564, 567, cert denied 383 US 954). The primary concern of a disciplinary proceeding is the protection of the public in its reliance on the integrity and responsibility of the legal profession (Matter of Levy, 37 NY2d 279, 282; Matter of Kahn, 38 AD2d 115, 124, affd 31 NY2d 752). Thus, the inquiry is not directed to the attorney’s subjective mental processes, but to the objective and qualitative nature of the conduct, for it is the acts themselves which the public sees and which guide its perception of the Bar (see, Matter of Gould, 4 AD2d 174, 175, lv denied 3 NY2d 708; see generally, Note, Disbarment: NonProfessional Conduct Demonstrating Unfitness to Practice, 43 Cornell LQ 489; 6 NY Jur 2d, Attorneys at Law, § 19). Although respondent was not criminally responsible for his acts, they tended to undermine public confidence in the Bar and, as such, they properly provided a basis for disciplinary action. Accordingly, charges one through four were properly sustained by the Appellate Division.
Ill
The eighth charge alleges that respondent violated the Appellate Division’s order of suspension by publishing an article in the Journal of Urban Psychiatry entitled The Right to Refuse Treatment: Therapeutic Orgy or Rotting With Your Rights On?, and by identifying himself in the article as "Robert T. Rowe, J.D.” The Appellate Division’s order, which substantially restates the provisions required by section 90 (2) of the Judiciary Law, directed respondent to desist and refrain "(1) from practicing law in any form * * * (2) from appearing as an attorney or counselor-at-law before any court * * * (3) from giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) from holding himself out in any way as an attorney and counselor-at-law”.
Respondent’s article did not violate subdivision (1) of the order. The practice of law involves the rendering of legal *342 advice and opinions directed to particular clients (see, El Gemayel v Seaman, 72 NY2d 701, 706; Matter of New York County Lawyers’ Assn, v Dacey, 28 AD2d 161, 173-174 [Stevens, J. R, dissenting], revd on dissenting opn below 21 NY2d 694). Respondent’s article sought only to present the state of the law to any reader interested in the subject. Inasmuch as it neither rendered advice to a particular person nor was intended to respond to known needs and circumstances of a larger group, its publication did not constitute the practice of law.
The Appellate Division concluded that the publication violated subdivision (3) of its suspension order because the article "offered advice to readers on the significance and effect of court decisions concerning the legal rights of psychiatric patients who refuse treatment” (174 AD2d 159, 161). As so applied, the Court’s order violated respondent’s constitutional right to speak freely.
The courts may, in the public interest, prohibit attorneys from practicing law and that prohibition may incidentally affect the attorney’s constitutional right to free speech by forbidding the giving of advice to clients. Where the individual is not practicing law, however, and "does not purport to be exercising judgment on behalf of any particular individual with whose circumstances he is directly acquainted, government regulation ceases to function as legitimate regulation of professional practice with only incidental impact on speech”, but rather impermissibly interferes with that individual’s First Amendment rights (see, Lowe v SEC, 472 US 181, 232 [White, J., concurring]; Thomas v Collins, 323 US 516, 544 [Jackson, J., concurring]). In this case, respondent was exercising his right to free speech by publishing his article (see, Matter of New York County Lawyers’ Assn, v Dacey, 28 AD2d 161, 176, revd on dissenting opn below 21 NY2d 694, supra). The Appellate Division, by applying its order to foreclose him from doing so, improperly "prohibited] him from engaging in endeavors which he could have undertaken had he never been admitted to the Bar in the first place” (see, Matter of Rosenbluth, 36 AD2d 383, 384).
Finally, it is not clear from the Appellate Division’s decision whether it concluded that respondent, by use of the letters J.D. following his name, had "[held] himself out * * * as an attorney” in violation of subdivision (4) of its suspension order. If it did so, its determination was error. The letters *343 identified him as one who had successfully completed a law school curriculum, not as a member of the Bar licensed to practice law.
We have reviewed respondent’s other contentions and find them without merit.
Accordingly, the order of the Appellate Division should be modified, without costs, by denying petitioner’s motion to confirm so much of the Special Referee’s report as sustained the eighth charge of misconduct, granting respondent’s motion to disaffirm that portion of the Special Referee’s report, and remitting to the Appellate Division, Second Department, for reconsideration of the discipline to be imposed, and, as so modified, affirmed.
Judges Kaye, Titone, Hancock, Jr., Bellacosa and Smith concur.
Order modified, without costs, and matter remitted to the Appellate Division, Second Department, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.