(June 24, 1997)

■ In the Matter of JOSEPH P. VAN DE LOO, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, Petitioner. [659 NYS2d 899] —Per Curiam. Respondent was admitted to practice by this Court in January 1983. He was employed by an Albany law firm until his resignation from the firm on July 25, 1995. He maintained a solo practice in Albany for about eight months after his resignation.

Petitioner, the Committee on Professional Standards, filed a petition and supplemental petition of charges against respondent. After a hearing, a Referee sustained most of the charges and specifications. Petitioner moves to confirm the Referee's report and respondent opposes the motion.

By decision dated March 8, 1996 (*Matter of Van De Loo*, 225 AD2d 885), we suspended respondent pending consideration of the disciplinary charges set forth in the petition; respondent has remained suspended since that time.

It is apparent from the record that respondent converted and mishandled client, firm and other funds commencing in 1993. In April 1993, he received a check payable to the firm for legal fees from Chris Abele Builders in the amount of $16,231.61. Respondent bought two cashier's checks, both payable to his firm, with the moneys and delivered one check, for $12,811.61, to the firm, and deposited the other check, for $3,240, into his personal checking account at Troy Savings Bank. He used the latter amount to advance legal fees to another firm client, Fitzgerald. The deposit into his personal checking account constituted a diversion of legal fees due the firm, as alleged in specification 1 of charge IV of the supplemental petition and violated the cited disciplinary rule (Code of Professional Responsibility DR 1-102 [A] [4], [5], [8] [22 NYCRR 1200.3 (a) (4), (5), (8)]). The payment to Fitzgerald was an improper advance of legal fees as alleged in specification 1 of charge V of the supplemental petition and violated the cited disciplinary rules (Code of Professional Responsibility DR 1-102 [A] [5] [22 NYCRR 1200.3 (a) (5)]; DR 5-103 [22 NYCRR 1200.22]).

By equal checks dated May 25 and July 8, 1994, both payable to respondent's law firm, respondent accepted $25,000 from firm client Cristo and deposited the moneys into his personal checking account. It appears from firm records that Cristo owed the firm only $8,015.75 in legal fees at that time. Despite request therefor by Cristo, respondent did not provide the client with bills. In July 1994, respondent remitted about $20,000 of the Cristo funds to a California law firm representing another firm client, Fretto. The deposits constituted conversion as charged in specifications 4 and 5 of charge II of the supplemental petition. However, because it appears that Fretto would be "ultimately liable" for the payment on her behalf, we find that the Referee should not have sustained specification 2 of charge V of the supplemental petition and that the payment did not violate the cited disciplinary provisions (Code of Professional Responsibility DR 1-102 [A] [5]; DR 5-103 [22 NYCRR 1200.3 (a) (5); 1200.22]).

On October 19, 1994, respondent deposited into his personal checking account two checks payable to the law firm from firm clients in the amounts of $1,172.75 and $395. The deposits constituted conversion of funds as alleged in specification 6 of charge II of the supplemental petition.

From April 1994 to February 1995, respondent received about $26,109.80 in checks payable to the law firm from firm client Abele; respondent deposited the checks into his personal checking account. He claims the deposits represented partial recoupment of $86,000 in firm legal fees he paid (from personal moneys) on behalf of Abele in 1991. Respondent can document two payments totaling $86,000 but has not documented any client or firm agreements relating to the payments. Firm records indicate the Abeles owed the firm $25,469.65 in February 1995. The deposits constituted a diversion of legal fees due the firm as alleged in specifications 2 and 3 of charge IV of the supplemental petition and violated the cited disciplinary provision (Code of Professional Responsibility DR 1-102 [A] [4], [5], [8] [22 NYCRR 1200.3 (a) (4), (5), (8)]).

In December 1994, during the course of his representation of client Carey on behalf of his firm, he took possession of over $100,000 in closing funds which Carey claimed was due her as a brokerage commission. Because ownership of the funds was disputed by a debtor in bankruptcy, respondent agreed by letter dated December 15, 1994, to place the funds in escrow and not to disburse them without authorizing court order. In March 1995, respondent established an account in his own name at Key Bank and deposited the escrow funds in the account. Thereafter, and without authorizing court order, he made the following disbursements from the account: $6,040 to Rezek on March 21, 1995 (she may have been entitled to closing proceeds but not from the escrow account); $10,000 payments to Carey on May 4 and June 4, 1995, and $30,000 to Carey on June 30, 1995; and $12,500 and $38,000 to himself on June 27 and 30, 1995, respectively. He used the June 27 disbursement to make a payment of $12,500 to Cristo. It appears he used the $38,000 disbursement to settle a dispute between himself and the Abeles concerning real estate he had purchased with them in 1989 and that his total payment to the Abeles was $60,800. By order dated October 12, 1995, Carey was awarded $96,140 and the debtor in bankruptcy was awarded $10,000 of the escrowed funds. Because respondent was not then present in the State, the order permitted Key Bank to make the payments directly, which it did on October 16, 1995, by debit memos to the Key Bank account. Respondent's disbursements from the Key Bank

account violated the letter escrow agreement and constituted conversion of the funds of third parties, as alleged in charges I and II of the petition and violated the cited disciplinary rules (Code of Professional Responsibility DR 1-102 [A] [4], [5], [8] [22 NYCRR 1200.3 (a) (4), (5), (8)]; DR 9-102 [22 NYCRR 1200.46]). That Key Bank, rather than respondent, issued checks to Carey and the debtor in bankruptcy did not constitute conversion and we therefore find that the Referee should not have sustained specification 3 of charge II. The account at Key Bank established by respondent failed to initially bear one of the titles required by Code of Professional Responsibility DR 9-102 (B) (22 NYCRR 1200.46 [b]) and, therefore, as alleged in charge IV of the petition, was in violation of that disciplinary rule and Code of Professional Responsibility DR 1-102 (A) (5) (22 NYCRR 1200.3 [a] [5]).

Twenty thousand dollars of the payment to the Abeles was given to respondent on June 30, 1995, by the Schmidts in the form of two $10,000 checks, one on Mr. Schmidt's account and the other on Mrs. Schmidt's account. The Schmidts also gave him a $6,000 check on July 10, 1995. The Referee found that the Schmidts intended that the moneys be used to pay legal fees of another firm client, the Hotalings. Respondent had been representing the Hotalings, who were facing foreclosure on their farm property in Schoharie County. The Hotalings had bought the farm from the Schmidts in the early 1990s; it had been in the Schmidt family since the 1700s. Firm records indicate the Hotalings owed the firm about $26,000 in legal fees at about the time the Schmidts issued the checks to respondent and that no portion of this amount has been paid. Respondent converted the Schmidt funds, as alleged in specifications 2 and 3 of charge II of the supplemental petition.

On July 17, 1995, the firm refunded $12,500 to Cristo. It appears that the firm's discovery of respondent's deception of Cristo and diversion of the client's funds, as well as his initial deception of the firm with respect to the funds, led to his resignation from the firm. Respondent's deception of Cristo and the firm constituted misconduct as alleged in charge VI of the supplemental petition and violated the cited disciplinary rule (Code of Professional Responsibility DR 1-102 [A] [4], [5], [8] [22 NYCRR 1200.3 (a) (4), (5), (8)]).

On July 24, 1995, Hans Funeral Home delivered a $100,000 check to respondent as a deposit on a contingent purchase offer of a Guilderland funeral home which was owned by a corporation in which respondent was a principal owner and officer. The contract stated the deposit was to be placed in an interest-

bearing bank account during the pendency of the closing and was, at all times, to remain the property of the purchasers and to be held in trust for them. If the real estate deal fell through, the deposit, plus interest, was to be returned to the purchasers immediately. Respondent deposited the $100,000 into the Key Bank account on July 24 to replace the moneys that he had disbursed to client Carey and himself. He deposited an additional $3,227 into the account on July 25, the date he resigned from the firm. The funeral home was purchased by its current tenant, not the Hans Funeral Home, at a closing held in January 1996. Respondent returned the deposit, plus interest, to the Hans Funeral Home in early April 1996. Respondent's handling of the deposit violated the escrow terms of the purchase contract, which he had signed on behalf of his corporation, and constituted conversion of the deposit, as alleged in charges I and II (specification 1) of the supplemental petition. We reject respondent's argument that his handling of the deposit was not professional misconduct because he was not acting as an attorney for either the buyers or the sellers. An attorney may be disciplined for conduct other than professional malfeasance when such conduct reflects adversely upon the legal profession and is not in accordance with the high standards imposed upon members of the Bar (*see, Matter of Rowe*, 80 NY2d 336, 340). Therefore, we find that respondent's handling of the deposit violated provisions of the general rule prohibiting lawyer misconduct (Code of Professional Responsibility DR 1-102 [A] [4], [5], [8] [22 NYCRR 1200.3 (a) (4), (5), (8)]) but not the rule governing a lawyer's handling of funds in his possession "incident to his * * * practice of law" (Code of Professional Responsibility DR 9-102 [A] [22 NYCRR 1200.46 (a)]).

After respondent resigned from his firm, he failed to promptly produce records of the Key Bank escrow account to the firm or petitioner, despite requests from both for such records. The failure constituted misconduct as alleged in specifications 1 and 2 of charge III of the petition and violated the cited disciplinary rules (Code of Professional Responsibility DR 1-102 [A] [4], [5], [8]; DR 9-102 [C], [D], [H], [I] [22 NYCRR 1200.3 (a) (4), (5), (8); 1200.46 (c), (d), (h), (i)]).

Despite respondent's vigorous contentions to the contrary, we find the Referee properly found that venal intent motivated respondent's misconduct. Moneys were entrusted to respondent and he betrayed that trust by expending the moneys for the benefit of persons unknown to the trustors and without their authorization. He kept financial transactions hidden from

the law firm, intercepted legal fees due the firm, and appears to have used certified checks to cover various deposits and withdrawals from his personal checking account and the Key Bank escrow account. He argues that he was afflicted with psychological disorders which may have motivated his misconduct. However, it is the objective and qualitative nature of the conduct in question, rather than the attorney's subjective mental processes, which provides the basis for disciplinary action (*see, Matter of Rowe, supra,* at 341).

In mitigation of his misconduct, respondent cites the psychological disorders and various stresses in his personal life and career. However, we reiterate that attorneys must properly attend to their professional responsibilities despite such intrusions which may explain and mitigate, but not excuse, misconduct (*see, e.g., Matter of Sexton,* 231 AD2d 832; *Matter of Rea,* 173 AD2d 955). Respondent also produced testimony of his good reputation in the legal community, and cites his otherwise unblemished disciplinary record and the lack of permanent monetary loss to any of his clients.

In view of all of the circumstances presented, and in order to protect the public, deter similar misconduct, and preserve the reputation of the Bar, we conclude that respondent should be disbarred, effective immediately.

Mikoll, J. P., Crew III, White, Yesawich Jr. and Peters, JJ., concur. Ordered that the motion to confirm the Referee's report be and hereby is granted, except insofar as the report sustained specification 3 of charge II of the petition, specification 2 of charge V of the supplemental petition, and the allegation of violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46) set forth in charge I and specification 1 of charge II of the supplemental petition; and it is further ordered that respondent be and hereby is found guilty of professional misconduct as set forth in the specifications and charges of the petition and supplemental petition, except insofar as the Referee failed to sustain charge III and specifications 3 and 4 of charge V of the supplemental petition and except insofar as we disaffirm the findings of the Referee that respondent was guilty of the professional misconduct set forth in specification 3 of charge II of the petition, specification 2 of charge V of the supplemental petition, and of violation of Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46) as set forth in charge I and specification 1 of charge II of the supplemental petition; and it is further ordered that respondent be and hereby is disbarred and his name is stricken from the roll of attorneys and counselors-at-law in the State of New York, ef-

fective immediately; and it is further ordered that respondent be and hereby is commanded to desist and refrain from the practice of law in any form, either as principal or as agent, clerk or employee of another; and he hereby is forbidden to appear as an attorney and counselor-at-law before any court, Judge, Justice, board, commission or other public authority, or to give to another an opinion as to the law or its application, or any advice in relation thereto; and it is further ordered that respondent shall comply with the provisions of section 806.9 (22 NYCRR 806.9) of the rules of this Court regulating the conduct of disbarred attorneys.