14-3845
Lola v. Skadden, Arps, Slate, Meagher & Flom

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2014

(Argued: May 29, 2015                    Decided: July 23, 2015)

Docket No. 14-3845-cv

_____

DAVID LOLA, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant,*

v.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP, TOWER LEGAL
STAFFING, INC.,

*Defendants-Appellees.*

_____

Before: POOLER, LOHIER, DRONEY, *Circuit Judges.*

David Lola, on behalf of himself and all others similarly situated, appeals

from the September 16, 2014 opinion and order of the United States District Court

for the Southern District of New York (Sullivan, *J.*) dismissing his putative

collective action seeking damages from Skadden, Arps, Slate, Meagher & Flom LLP and Tower Legal Staffing, Inc. for violations of the overtime provision of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), arising out of Lola's work as a contract attorney in North Carolina. We agree with the district court that: (1) state, not federal, law informs FLSA's definition of "practice of law;" and (2) North Carolina, as the place where Lola worked and lived, has the greatest interest in this litigation, and thus we look to North Carolina law to determine if Lola was practicing law within the meaning of FLSA. However, we disagree with the district court's conclusion, on a motion to dismiss, that by undertaking the document review Lola allegedly was hired to conduct, Lola was necessarily "practicing law" within the meaning of North Carolina law.

Vacated and remanded.

_____

D. MAIMON KIRSCHENBAUM, Joseph & Kirschenbaum LLP (Denise A. Shulman, *on the brief*), New York, NY, *for Plaintiff-Appellant David Lola, on behalf of himself and all others similarly situated.*

BRIAN J. GERSHENGORN, Ogletree, Deakins, Nash, Smoak & Stewart, P.C. (Stephanie L.

Aranyos, *on the brief*) New York, N.Y. *for Defendants-Appellees Skadden, Arps, Slate, Meagher & Flom LLP and Tower Legal Staffing, Inc.*

POOLER, *Circuit Judge*:

David Lola, on behalf of himself and all others similarly situated, appeals from the September 16, 2014 opinion and order of the United States District Court for the Southern District of New York (Sullivan, *J.*) dismissing his putative collective action seeking damages from Skadden, Arps, Slate, Meagher & Flom LLP and Tower Legal Staffing, Inc. for violations of the overtime provision of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), arising out of Lola's work as a contract attorney in North Carolina. We agree with the district court's conclusion that: (1) state, not federal, law informs FLSA's definition of "practice of law;" and (2) North Carolina, as the place where Lola worked and lived, has the greatest interest in this litigation, and thus we look to North Carolina law to determine if Lola was practicing law within the meaning of FLSA. However, we disagree with the district court's conclusion, on a motion to dismiss, that by undertaking the document review Lola allegedly was hired to conduct, Lola was necessarily "practicing law" within the meaning of North Carolina law. We find that accepting the allegations as pleaded, Lola adequately alleged in his

3

complaint that his document review was devoid of legal judgment such that he was not engaged in the practice of law, and remand for further proceedings.

**BACKGROUND**

Lola commenced this FLSA collective action against Skadden, Arps, Slate, Meagher & Flom LLP and Tower Legal Staffing Inc. In his first amended complaint, Lola alleged that Skadden, a Delaware limited liability partnership, is based in New York City. He alleges that Tower is a New York corporation that provides attorneys and paralegals on a contract basis to various law firms and corporate law departments. Lola alleges that Skadden and Tower (together, "Defendants") were joint employers within the meaning of FLSA.

Lola, a North Carolina resident, alleges that beginning in April 2012, he worked for Defendants for fifteen months in North Carolina. He conducted document review for Skadden in connection with a multi-district litigation pending in the United States District Court for the Northern District of Ohio. Lola is an attorney licensed to practice law in California, but he is not admitted to practice law in either North Carolina or the Northern District of Ohio.

Lola alleges that his work was closely supervised by the Defendants, and his "entire responsibility . . . consisted of (a) looking at documents to see what

4

search terms, if any, appeared in the documents, (b) marking those documents into the categories predetermined by Defendants, and (c) at times drawing black boxes to redact portions of certain documents based on specific protocols that Defendants provided." App'x at 20 ¶ 28. Lola further alleges that Defendants provided him with the documents he reviewed, the search terms he was to use in connection with those documents, and the procedures he was to follow if the search terms appeared. Lola was paid $25 an hour for his work, and worked roughly forty-five to fifty-five hours a week. He was paid at the same rate for any hours he worked in excess of forty hours per week. Lola was told that he was an employee of Tower, but he was also told that he needed to follow any procedures set by Skadden attorneys, and he worked under the supervision of Skadden attorneys. Other attorneys employed to work on the same project performed similar work and were likewise paid hourly rates that remained the same for any hours worked in excess of forty hours per week.

Defendants moved to dismiss the complaint, arguing that Lola was exempt from FLSA's overtime rules because he was a licensed attorney engaged in the practice of law. The district court granted the motion, finding (1) state, not federal, standards applied in determining whether an attorney was practicing

law under FLSA; (2) North Carolina had the greatest interest in the outcome of the litigation, thus North Carolina's law should apply; and (3) Lola was engaged in the practice of law as defined by North Carolina law, and was therefore an exempt employee under FLSA. *Lola v. Skadden, Arps, Slate, Meagher & Flom, LLP*, No. 13-cv-5008 (RJS), 2014 WL 4626228 (S.D.N.Y. Sept. 16, 2014). This appeal followed.

## DISCUSSION

"We review *de novo* a district court's dismissal of a complaint for failure to state a claim, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in plaintiffs' favor." *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013).

Pursuant to FLSA, employers must generally pay employees working overtime  one and one-half times the regular rate of pay for any hours worked in excess of forty a week. 29 U.S.C. § 207(a)(1). However, employees "employed in a bona fide . . . professional capacity" are exempt from that requirement. *Id.* § 213(a)(1). The statute does not provide a definition of "professional capacity," instead delegating the authority to do so to the Secretary of the Department of Labor ("DOL"), who defines "professional employees" to include those

6

employees who are:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ; and
>
> (2) Whose primary duty is the performance of work:
>
>> (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of intellectual instruction; or
>>
>> (ii) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

29 C.F.R. § 541.300. These requirements, however, do not apply to attorneys engaged in the practice of law. 29 C.F.R. § 541.304(d) ("The requirements of § 541.300 and subpart G (salary requirements) of this part do not apply to the employees described in this section."). Instead, attorneys fall under 29 C.F.R. § 541.304, which exempts from the overtime requirement:

> Any employee who is the holder of a valid license or certificate permitting the practice of law or medicine or any of their branches and is actually engaged in the practice thereof[.]

*Id.* § 541.304(a)(1). While it is undisputed that Lola is an attorney licensed to practice law in California, the parties dispute whether the document review he allegedly performed constitutes "engaging in the practice of law."

## I.    "Practice of law."

Lola urges us to fashion a new federal standard defining the "practice of law" within the meaning of Section 541.304. We decline to do so because we agree with the district court that the definition of "practice of law" is "primarily a matter of state concern." *Lola*, 2014 WL 4626228, at *4 (citation omitted).

In *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991), the Supreme Court examined whether, in an action based on a federal statute, federal common law should incorporate state law. There, the issue was whether the contours of the demand futility requirement of the Investment Company Act of 1940 must be discerned by reference to state law or by reference to federal law. *Id.* at 97-98. The *Kamen* Court explained "that a court should endeavor to fill the interstices of federal remedial schemes with uniform federal rules only when the scheme in question evidences a distinct need for nationwide legal standards, or when express provisions in analogous statutory schemes embody congressional policy choices readily applicable to the matter at hand." *Id.* at 98 (citation omitted). "Otherwise," the Court continued:

> we have indicated that federal courts should
> incorporate state law as the federal rule of decision,
> unless application of the particular state law in question

8

would frustrate specific objectives of the federal programs. The presumption that state law should be incorporated into federal common law is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards.

*Id.* (internal citation, quotation marks and alterations omitted).

Applying these principles, the Supreme Court explained that "where a gap in the federal securities laws must be bridged by a rule that bears on the allocation of governing powers within the corporation, federal courts should incorporate state law into federal common law unless the particular state law in question is inconsistent with the policies underlying the federal statute." *Id.* at 108 (emphasis omitted). Thus, the *Kamen* court concluded that "the scope of the demand requirement" must be determined by the law of the state of incorporation. *Id.* at 108.

*De Sylva v. Ballentine*, 351 U.S. 570 (1956), is also instructive in determining whether state or federal law should define the sweep of a federal right.. In *De Sylva*, the Supreme Court examined the question of whether an illegitimate child was a "child" within the meaning of the Copyright Act. Noting that "[t]he scope of a federal right is, of course, a federal question, but that does not mean that its

9

content is not to be determined by state, rather than federal law," *id.*, the court also observed that "[t]his is especially true where a statute deals with a familial relationship; there is no federal law of domestic relations, which is primarily a matter of state concern." *Id.* The Court then relied on state law to define "child" within the meaning of the federal Copyright Act. *Id.* at 581.

Just as "there is no federal law of domestic relations," here there is no federal law governing lawyers. Regulating the "practice of law" is traditionally a state endeavor. No federal scheme exists for issuing law licenses. As the district court aptly observed, "[s]tates regulate almost every aspect of legal practice: they set the eligibility criteria and oversee the admission process for would-be lawyers, promulgate the rules of professional ethics, and discipline lawyers who fail to follow those rules, among many other responsibilities." *Lola*, 2014 WL 4626228, at *4. The exemption in FLSA specifically relies on the attorney possessing "a valid license . . . permitting the practice of law." 29 C.F.R. § 541.304(a)(1). The regulation's history indicates that the DOL was well aware that such licenses were issued by the states. *See* Wage and Hour and Public Contracts Divisions, U.S. Department of Labor, Report and Recommendations of the Presiding Officer at Public Hearings on Proposed Revisions of Regulations, Part

541, at 77 (1949) (noting that the exemption for attorneys was based in part on "the universal requirement of licensing by the various jurisdictions"). In rejecting a proposal to exempt librarians from the overtime rules, the DOL noted that "states do not generally license the practice of library science, so that in this respect . . . the profession is not comparable to that of law or medicine." *Id.* A similar distinction was drawn in a discussion of extending the exemption to architects and engineers:

> The practice of law and medicine has a long history of state licensing and certification; the licensing of engineers and architects is relatively recent. While it is impossible for a doctor or lawyer legally to practice his profession without a certificate or license, many architects and engineers perform work in these fields without possessing licenses, although failure to hold a license may limit their permissible activities to those of lesser responsibilities.

*Id.* We thus find no error with the district court's conclusion that we should look to state law in defining the "practice of law."

## II.    Choice of law.

We turn to the question of which state's law to apply. "Where jurisdiction is based on the existence of a federal question . . . we have not hesitated to apply a federal common law choice of law analysis." *Barkanic v. Gen. Admin. of Civil*

11

*Aviation of the People's Republic of China*, 923 F.2d 957, 961 (2d Cir. 1991). "The federal common law choice-of-law rule is to apply the law of the jurisdiction having the greatest interest in the litigation." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 350 (2d Cir. 1992). Here, there are four possible forum states: North Carolina (where Lola worked and lived); Ohio (where the underlying litigation is venued); California (where Lola is barred); and New York (where Skadden is located).

"[W]hen conducting a federal common law choice-of-law analysis, absent guidance from Congress, we may consult the Restatement (Second) of Conflict of Laws." *Eli Lilly Do Brasil, Ltda v. Fed. Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007). The Restatement provides in relevant part that:

> The validity of a contract for the rendition of services and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the local law of the state where the contract requires that the services, or a major portion of the services, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which [ ] event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 196 (1971). Here, the services were

rendered in North Carolina. Moreover, as the state where Lola resides, North Carolina possesses a strong interest in making sure Lola is fairly paid. We find no error in the district court's decision to apply North Carolina law.

**III.     Definition of "practice of law" under North Carolina law.**

North Carolina defines the "practice of law" in its General Statutes, Section 84–2.1, which provides that:

> The phrase "practice law" as used in this Chapter is defined to be performing any legal service for any other person, firm or corporation, with or without compensation, specifically including . . . the preparation and filing of petitions for use in any court, including administrative tribunals and other judicial or quasi-judicial bodies, or assisting by advice, counsel, or otherwise in any legal work; and to advise or give opinion upon the legal rights of any person, firm or corporation . . . .

N.C. Gen. Stat. § 84–2.1. North Carolina courts typically read Section 84–2.1 in conjunction with Section 84–4, which defines the unauthorized practice of law as follows:

> Except as otherwise permitted by law, . . . it shall be unlawful for any person or association of persons except active members of the Bar, for or without a fee or consideration, to give legal advice or counsel, [or] perform for or furnish to another legal services . . . .

*Id.* § 84–4; *see N.C. State Bar v. Lienguard, Inc.*, No. 11–cvs–7288, 2014 WL 1365418, at *6–7 (N.C. Super. Ct. Apr. 4, 2014).

The North Carolina General Statutes do not clarify whether "legal services" includes the performance of document review. Nevertheless, the North Carolina State Bar issued a formal ethics opinion shedding light on what is meant by "legal services."[1] The question considered in the ethics opinion was: "May a lawyer ethically outsource legal support services abroad, if the individual providing the services is either a nonlawyer or a lawyer not admitted to practice in the United States (collectively 'foreign assistants')?" In its opinion, the Bar's Ethics Committee opined that:

> A lawyer may use foreign assistants for administrative support services such as document assembly, accounting, and clerical support. A lawyer may also use foreign assistants for limited legal support services such as reviewing documents; conducting due diligence; drafting contracts, pleadings, and memoranda of law; and conducting legal research. Foreign assistants may not exercise independent legal judgment in making decisions on behalf of a client. . . . The limitations on the type of legal services that can be outsourced, in

---

[1] The ethics opinion technically referred only to "legal support services." Nothing in the opinion or in the relevant North Carolina caselaw suggests that there is any meaningful difference between "legal services" and "legal support services."

conjunction with the selection and supervisory requirements associated with the use of foreign assistants, insures that the client is competently represented. *See* Rule 5.5(d). Nevertheless, when outsourcing legal support services, lawyers need to be mindful of the prohibitions on unauthorized practice of law in Chapter 84 of the General Statutes and on the prohibition on aiding the unauthorized practice of law in Rule 5.5(d).

N.C. State Bar Ethics Committee, 2007 Formal Ethics Op. 12 (Apr. 25, 2008).

The district court found that (1) under North Carolina law, document review is considered "legal support services," along with "drafting contracts, pleadings, and memoranda of law[,] and conducting legal research;" (2) the ethics opinion draws a clear line between legal support services, like document review, and "administrative support services," like "document assembly, accounting, and clerical support;" and (3) by emphasizing that only lawyers may undertake legal work, the ethics opinion makes clear that "document review, like other legal support services, constitutes the practice of law and may be lawfully performed by a non-lawyer only if that non-lawyer is supervised by a licensed attorney." *Lola*, 2014 WL 4626228, at *11–12 (alteration in the original). Thus, the district court concluded, any level of document review is considered the "practice of law" in North Carolina. *Id.* at 12. The district court also concluded that because

FLSA's regulatory scheme carves doctors and lawyers out of the salary and duty analysis employed to discern if other types of employees fall within the professional exemption, a fact-intensive inquiry is at odds with FLSA's regulatory scheme. *Id.* at *13.

We disagree. The district court erred in concluding that engaging in document review per se constitutes practicing law in North Carolina. The ethics opinion does not delve into precisely what type of document review falls within the practice of law, but does note that while "reviewing documents" may be within the practice of law, "[f]oreign assistants may not exercise independent legal judgment in making decisions on behalf of a client." N.C. State Bar Ethics Committee, 2007 Formal Ethics Op. 12. The ethics opinion strongly suggests that inherent in the definition of "practice of law" in North Carolina is the exercise of at least a modicum of independent legal judgment.[2]

---

[2] Were it an option, we might have opted to certify the question of how to define "practice of law" to the North Carolina courts. *See AGI Assocs. LLC v. City of Hickory, N.C.*, 773 F.3d 576, 579 n.4 (4th Cir. 2014) ("A lack of controlling precedent on the state rule of decision can merit certification of the issue to the state's highest court. The State of North Carolina, however, has no certification procedure in place for federal courts to certify questions to its courts.").

Although the parties do not cite, and our research did not reveal, a case directly on point, two decisions of the North Carolina courts that relied, in part, on the exercise of legal judgment to support a finding of unauthorized practice of law also support such a conclusion. *Lienguard*, 2014 WL 1365418, at *9–11 (lien filing service engaged in unauthorized practice of law in preparing claims of lien); *LegalZoom.com, Inc. v. N.C. State Bar*, No. 11–cvs–15111, 2014 WL 1213242, at *12 (N.C. Super. Ct. Mar. 24, 2014) (noting that the "scrivener's exception" to the unauthorized practice of law allows "unlicensed individuals [to] record information that another provides without engaging in [the unlicensed practice of law] as long as they do not also provide advice or express legal judgments").

Moreover, many other states also consider the exercise of some legal judgment an essential element of the practice of law. *See, e.g., In re Discipline of Lerner*, 197 P.3d 1067, 1069-70 (Nev. 2008) ("exercise of legal judgment on a client's behalf" key to analysis of whether a person engaged in the unauthorized practice of law); *People v. Shell*, 148 P.3d 162, 174 (Colo. 2006) ("[O]ne of the touchstones of Colorado's ban on the unauthorized practice of law is an unlicensed person offering advice or judgment about legal matters to another person for use in a specific legal setting"); *Or. State Bar v. Smith*, 942 P.2d 793, 800

17

(Or. Ct. App. 1997) ("The 'practice of law' means the exercise of professional judgment in applying legal principles to address another person's individualized needs through analysis, advice, or other assistance."); *In re Discipio*, 645 N.E.2d 906, 910 (Ill. 1994) ("The focus of the inquiry" into whether person engaged in unauthorized practice of law is, in fact, "whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent."); *In re Rowe*, 80 N.Y.2d 336, 341–42 (1992) (authoring an article on the legal rights of psychiatric patients who refuse treatment did not constitute the practice of law because "[t]he practice of law involves the rendering of legal advice and opinions directed to particular clients").

The gravamen of Lola's complaint is that he performed document review under such tight constraints that he exercised no legal judgment whatsoever—he alleges that he used criteria developed by others to simply sort documents into different categories. Accepting those allegations as true, as we must on a motion to dismiss, we find that Lola adequately alleged in his complaint that he failed to exercise any legal judgment in performing his duties for Defendants. A fair reading of the complaint in the light most favorable to Lola is that he provided services that a machine could have provided. The parties themselves agreed at

oral argument that an individual who, in the course of reviewing discovery documents, undertakes tasks that could otherwise be performed entirely by a machine cannot be said to engage in the practice of law. We therefore vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

## CONCLUSION

For the reasons given above, the judgment of the district court is vacated, and this matter remanded.

19