Matter of Fleischman (2023 NY Slip Op 04205)

Matter of Fleischman

2023 NY Slip Op 04205

Decided on August 9, 2023

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 9, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
FRANCESCA E. CONNOLLY, JJ.

2020-05649

[*1]In the Matter of Jeffrey Alan Fleischman, a suspended attorney. Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, petitioner; Jeffrey Alan Fleischman, respondent. (Attorney Registration No. 2603215)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts. The Grievance Committee commenced this disciplinary proceeding pursuant to 22 NYCRR 1240.8 by the service and the filing of a notice of petition dated July 23, 2020, and a verified petition dated July 21, 2020. The respondent served and filed an answer dated August 19, 2020. By decision and order on application dated December 11, 2020, this Court referred the matter to the Honorable Patricia M. DiMango, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the First Judicial Department on January 31, 1994. By decision and order on motion dated December 11, 2020, the respondent was suspended immediately from the practice of law pursuant to 22 NYCRR 1240.9(a)(2) and (5).

Diana Maxfield Kearse, Brooklyn, NY (David W. Chandler of counsel), for
petitioner.
Samuel J. Karliner, New York, NY, for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts served the respondent with a notice of petition dated July 23, 2020, and a verified petition dated July 21, 2020, containing seven charges of professional misconduct. The respondent served and filed an answer dated August 19, 2020, admitting to all the allegations as set forth in the charges. Subsequently, the Grievance Committee served and filed a joint statement of disputed and [*2]undisputed facts on or about September 1, 2020, and requested the appointment of a Special Referee. By decision and order on application dated December 11, 2020, this Court referred the matter to the Honorable Patricia M. DiMango, as Special Referee, to hear and report. A prehearing conference was held on September 13, 2021, and a hearing was conducted on November 9, 2021, and January 19, 2022. In a report dated March 31, 2022, the Special Referee sustained all seven charges in the petition. The Grievance Committee now moves to confirm the Special Referee's report, impose such discipline upon the respondent as the Court deems just and proper, and to grant such further relief as the Court deems just and proper. The respondent files no papers in response. In view of the admissions by the respondent and the evidence adduced at the hearing, we find that the Special Referee properly sustained all seven charges.
The Petition 
The verified petition contains seven charges of professional misconduct concerning
the respondent's escrow account at Capital One Bank, titled "Law Office of Jeffrey A. Fleischman Escrow Account," (hereinafter escrow account). The respondent also maintained a personal checking account at Capital One Bank (hereinafter personal account). Charges one though five allege that the respondent misappropriated funds entrusted to him as a fiduciary incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0).
As for charge one, the respondent was the escrow agent for the sale of a condominium located at 1525 43rd Street, Unit 3, in Brooklyn in or about 2019. In or about January 2019, the respondent received a down payment of $60,000 for this transaction. On January 9, 2019, he deposited $10,000 of the down payment into his escrow account. Between January 11, 2019, and January 22, 2019, the respondent transferred the entire $10,000 down payment from his escrow account to his personal account and used the funds for his personal use and benefit. By close of business on January 22, 2019, the respondent's escrow account balance was $77.16. On January 30, 2019, the respondent deposited the remaining $50,000 of the down payment into his escrow account, and on February 5, 2019, the respondent transferred $60,000 from his escrow account to his personal account for his personal use and benefit. As a result of that transfer, and prior to the closing of the condominium sale on March 29, 2019, the escrow account balance had been depleted to $3,827.16.
As to charge two, the respondent served as an escrow agent for the sale of another
condominium located at 1525 43rd Street, Unit 2, in Brooklyn. On February 14, 2019, the purchaser wired a $100,000 down payment into the respondent's escrow account. Pursuant to the purchase agreement, the down payment was to be held in escrow until closing or earlier termination. On February 15, 2019, the respondent transferred the entire $100,000 down payment from his escrow account to his personal account and used the funds for his personal use and benefit. As a result of that transfer, and prior to the closing of the condominium sale on March 5, 2019, the escrow account balance had been depleted to $3,827.16.
As to charge three, in or about 2018, the respondent represented the seller in the sale
of a real property in Sea Girt, New Jersey. On or about November 7, 2018, the respondent deposited $75,000, representing the down payment for this real estate transaction, into his escrow account. Pursuant to the sales contract, the respondent was required to hold the down payment in escrow until closing of the sale, which took place on December 11, 2018. By December 1, 2018, the respondent's escrow account balance fell to $39,577.16, about $35,423 below what he was required to maintain for this matter.
As to charge four, the respondent represented the seller in the sale of a real property in Manhattan. On or about February 27, 2019, the respondent deposited $150,000 into his escrow account for this transaction. By April 23, 2019, prior to the closing of the sale on May 1, 2019, the respondent's escrow account balance was $52,000, $98,000 below what he was required to maintain [*3]for this matter.
As to charge five, in February 2019, the respondent represented both the lender and
the borrower in a loan transaction. On or about May 6, 2019, the lender wired the loan principal of $500,000 to the respondent's escrow account. Between May 7, 2019, and September 3, 2019, the respondent debited a total amount of $114,950 from these loan proceeds for his personal use and benefit. Between April 30, 2019, and July 31, 2019, the respondent issued escrow check no. 518 in the amount of $13,750 to the lender and postdated the check to August 1, 2019. This check was to pay the quarterly interest on the $500,000 loan. On August 1, 2019, check no. 518 was dishonored due to insufficient funds in the escrow account.
Charge six alleges that the respondent commingled personal funds with funds entrusted to him as a fiduciary incident to his practice of law in violation of rule 1.15(a) of the Rules of Professional Conduct when he allowed personal funds in the form of earned legal fees to remain in his escrow account. Charge seven alleges that the respondent failed to maintain required bookkeeping records for his escrow account by failing to consistently, contemporaneously, and accurately record the receipt of escrow funds; the names of all persons for whom the funds are or were held; the date, source, and description of each item deposited into the escrow account; and the date, payee, and purpose of each disbursement, in violation of rule 1.15(d) of the Rules of Professional Conduct.
The Hearing Evidence 
The Grievance Committee submitted various documents to prove its case-in-chief, including the transcripts of the respondent's examinations under oath (EUO) dated January 21, 2020, and February 6, 2020. The respondent testified at his EUO that he opened his own practice in 2014, practicing in the areas of estate planning and administration, real estate, and tax planning. The respondent had about eight to ten large clients, consisting of groups of family members whom he had represented prior to opening his own practice, and about twelve to fifteen clients he represented for short term projects. The respondent testified that when he first started his own practice, he had the assistance of a very competent office manager, and therefore, for the first two years, his law practice was very successful. After that, the workload became too challenging and he began to suffer from anxiety. He was prescribed Xanax for his anxiety in 2017. While the Xanax worked well, the respondent testified that he began to abuse the dosage. This led to the respondent seeking similar medication from other sources outside of a doctor's care. In or around the end of March 2018 and the beginning of April 2018, the respondent was hospitalized for two weeks, after he purchased counterfeit drugs and went into withdrawal where he suffered seizures and hallucinations. Shortly thereafter, the respondent's office manager left, causing him increased anxiety and stress. By 2019, the respondent was addicted to opiates, and within six months, he became an active heroin user.
The respondent admitted that he was never good at billing, and when his office manager left, he stopped properly maintaining his escrow account ledger. He was not collecting fees and, therefore, could not keep up with his expenses. In addition, he had an expensive drug habit. The respondent began to withdraw funds from his escrow account, and disbursed client funds for his own personal use and benefit, including paying for his office rent, office cleaning service, employee payroll, a driver, a personal loan, and his drug rehabilitation treatment. He also admitted that he used other client funds to advance an interest-free "loan" to client JG. JG was the borrower in the loan transaction described in charge five of the petition. On March 4, 2019, the respondent advanced JG $50,000 from his escrow account, and on April 1, 2019, he advanced JG an additional $5,000. Both of these advances took place before JG obtained the $500,000 loan from another client, YL. The respondent explained that JG was a long-term client and that the respondent had represented JG's parents and the parents' estate. JG was having financial troubles so the respondent "loaned" him money (from other client funds) which JG had since paid back. There is no indication in the record [*4]that the respondent obtained permission from his client(s) to "loan" JG $55,000.
Regarding the $13,750 dishonored check, no. 518, as described in charge five, the respondent further testified that because both JG and YL were long-term clients, as a matter of convenience to YL, the respondent issued him a cluster of checks, which were postdated, to pay for future quarterly interest payments due for the $500,000 loan. The funds for the interest payments were deducted from the original loan amount and were to be kept in the respondent's escrow account until the interest payment became due. The respondent claimed that before YL deposited an interest check, he was supposed to contact the respondent. However, between July 7, 2019, and August 7, 2019, the respondent was in a rehabilitation facility, and therefore was unreachable. YL deposited check no. 518, and it was dishonored on August 1, 2019, due to insufficient funds.
Between in or about April 2019 to in or about August 2020, the respondent entered various drug treatment programs, with intermittent relapses. From August 2020 to approximately February 2021, the respondent resumed the use of drugs, and eventually enrolled in Hazelden Betty Ford Rehabilitation Center, a residential rehabilitation facility in Naples, Florida. We note that an affirmation submitted by respondent's counsel in opposition to the Grievance Committee's interim suspension motion dated August 19, 2020, which motion was pending until December 11, 2020, maintained that the respondent's drug addiction was "under control."
In March 2021, the respondent was discharged from Hazelden, and in about June
2021, the respondent relapsed again. He appeared to have maintained his sobriety by the time of the disciplinary hearing.
Findings and Conclusion 
In view of the respondent's admissions and the evidence adduced at the hearing, we find that the Special Referee properly sustained charges one through seven. In determining an appropriate sanction, while the respondent's addiction may have been a significant cause of his misconduct, it does not excuse his serious professional misconduct of misappropriating funds to pay for his personal expenses and providing loans to another client without authorization. Furthermore, although the respondent may be well-intentioned in his efforts to overcome his addiction to drugs, he has failed to establish a likelihood of long-term rehabilitation, and that he would not be a threat to the public if he resumed the practice of law. While the Court recognizes the struggles of drug addiction rehabilitation, "[a] disciplinary proceeding is concerned with fitness to practice law, not punishment . . . . The primary concern of a disciplinary proceeding is the protection of the public in its reliance on the integrity and responsibility of the legal profession" (Matter of Rowe , 80 NY2d 336, 341).
Under the totality of the circumstances, we find that disbarment is warranted.
LASALLE, P.J., DILLON, DUFFY, BARROS and CONNOLLY, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that pursuant to Judiciary Law § 90, effective immediately, the respondent, Jeffrey Alan Fleischman, a suspended attorney, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,
ORDERED that the respondent, Jeffrey Alan Fleischman, shall continue to comply
with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, the respondent, Jeffrey Alan Fleischman, shall continue to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Jeffrey Alan Fleischman, has been issued a secure
pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Acting Clerk of the Court